UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PENNEY SUE DREWER,<br><br>                    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>                    Defendant. | NO:  13-CV-0383-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 11, 12).  Dana C. Madsen represents Plaintiff.  Nicole A. Jabaily represents Defendant.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion and grants Defendant's motion.

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's]

ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing

that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

   If the claimant is not engaged in substantial gainful activities, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled.  *Id.*

   At step three, the Commissioner compares the claimant's impairment to

several impairments recognized by the Commissioner to be so severe as to

preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 404.1520(d).

   If the severity of the claimant's impairment does meet or exceed the severity

of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. §

404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §

404.1520(g)(1).  If the claimant is not capable of adjusting to other work, the

analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If

the analysis proceeds to step five, the burden shifts to the Commissioner to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits on June 29, 2009. Tr. 291-97. Her application was denied initially and upon reconsideration, Tr. 168-70, 172-73, and Plaintiff requested a hearing. Tr. 177-78. Plaintiff appeared before an administrative law judge ("ALJ") on October 22, 2010. Tr. 101-44. The ALJ issued a decision denying Plaintiff benefits on November 15, 2010. Tr. 149-62. Plaintiff requested review of the ALJ's decision. Tr. 218. The Appeals Council ordered a remand, and another hearing was held on March 29, 2012. Tr. 73-100. Plaintiff appeared for additional testimony on August 2, 2012. Tr. 40-72. The ALJ issued a decision again denying Plaintiff benefits on August 17, 2012. Tr. 18-38.

The ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through December 31, 2011. Tr. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 23, 2008, the alleged onset date, through December 31, 2011, her date last insured. Tr. 23. At step two, the ALJ found that Plaintiff had the following severe impairments: right rotator cuff tear, cervical degenerative disc disease, adjustment

disorder with depression and anxiety, and pain disorder secondary to general

medical condition and psychological factors.  Tr. 23-27.  At step three, the ALJ

found that Plaintiff's severe impairments did not meet or medically equal a listed

impairment through the date last insured.  Tr. 27-28.  The ALJ then determined

that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) that does not
> require frequent or prolonged pushing/pulling of arm controls with the
> right dominant arm. She can occasionally climb ramps or stairs, but
> should avoid climbing ladders, ropes, or scaffolds. She can
> occasionally engage in stooping, crouching, or crawling. She should
> avoid concentrated exposure to strong vibration, extreme cold, and
> hazards such as machinery and unprotected heights. She should avoid
> overhead reaching with the right upper extremity, but is capable of
> occasional reaching in all other directions. She has mild to
> occasionally moderate limitations in the ability to maintain attention
> and concentration for extended periods and in the ability to respond
> appropriately to changes in the work setting. The claimant takes
> prescription medications for her physical and mental symptomatology,
> including mild to moderate, occasional to frequent pain; however, she
> would be able to remain reasonably attentive and responsive in a work
> setting and would be able to carry out normal work assignments
> satisfactorily.

Tr. 28.  At step four, the ALJ found that Plaintiff was able to perform past relevant

work as a flagger.  Tr. 31.  Alternatively, at step five, after considering the

Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff

could perform other work existing in significant numbers in the national economy

in representative occupations, such as parking lot attendant and survey worker.  Tr.

31-32.  Thus, the ALJ concluded that Plaintiff was not disabled and denied her claims on that basis.  Tr. 32-33.

The Appeals Council denied Plaintiff's request for review on September 12, 2013, Tr. 1-5, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  ECF No. 11.  From Plaintiff's brief, the Court has discerned the following four issues for review:

1. Whether the ALJ erred in assessing Plaintiff's credibility;

2. Whether the ALJ erred in rejecting the opinions of Dr. Vicki Short and Dr. Dennis Pollack;

3. Whether the ALJ erred at step three when she did not find that Plaintiff's condition met or equaled a listed impairment; and

4. Whether the ALJ failed to pose a legally sufficient hypothetical question to the vocational expert.

*Id.* at 13-20.

//

//

//

# DISCUSSION

## A. Adverse Credibility Finding

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. §§ 416.908, 416.927.  A claimant's statements about his or her symptoms alone will not suffice.  20 C.F.R. §§ 416.908, 416.927.  Once an impairment has been proven to exist, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.*  This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

In order to find Plaintiff's testimony unreliable, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  An ALJ must perform a two-step analysis when deciding whether to accept a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The

first step is a threshold test from *Cotton v. Bowen* requiring the claimant to

"produce medical evidence of an underlying impairment which is reasonably likely

to be the cause of the alleged pain."  799 F.2d 1403, 1407 (9th Cir. 1986); *see also*

*Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).  "Once a claimant meets the

*Cotton* test and there is no affirmative evidence suggesting she is malingering, the

ALJ may reject the claimant's testimony regarding the severity of her symptoms

only if [the ALJ] makes specific findings stating clear and convincing reasons for

doing so."  *Smolen*, 80 F.3d at 1283-84 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918

(9th Cir. 1993)).  In weighing the claimant's credibility, the ALJ may consider

many factors, including "'(1) ordinary techniques of credibility evaluation, such as

the claimant's reputation for lying, prior inconsistent statements concerning the

symptoms, and other testimony by the claimant that appears less than candid; (2)

unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; and (3) the claimant's daily activities.'"

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80

F.3d at 1284).  If the ALJ's finding is supported by substantial evidence, the court

may not engage in second-guessing.  *Id*.  "Contradiction with the medical record is

a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v.*

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

Here, Plaintiff contends the ALJ improperly discounted her credibility. ECF No. 11 at 15-18. This Court finds the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for finding Plaintiff's subjective statements "only partially credible." Tr. 29. The ALJ based her adverse credibility finding on the following: (1) Plaintiff's statements were inconsistent with the objective medical evidence, and (2) Plaintiff's conservative treatment was inconsistent with the disabling symptoms and limitations alleged. Tr. 27-30.

First, the ALJ found that Plaintiff's statements concerning the severity of her symptoms and limitations were inconsistent with the objective medical evidence. Tr. 29-30. Although Plaintiff testified to disabling shoulder and arm pain, a medical examination demonstrated normal strength and sensation, an MRI showed merely "mild" spondylitic disease, and Plaintiff was prescribed conservative treatment only. Tr. 29-30, 458, 541-42. Further, despite Plaintiff's claims that her fist would "freeze up" when she grips, an evaluation demonstrated Plaintiff was able to repetitively grip and release an object with her hand. Tr. 30, 455, 459. Finally, although Plaintiff complained of worsening shoulder conditions from her 2004 injury, the ALJ noted the longitudinal record did not support total disability; more appropriately, the evidence demonstrated that Plaintiff should be limited to light work. Tr. 30, 47-48, 458, 470. These inconsistencies between Plaintiff's

1   alleged limitations and objective medical evidence provided a permissible and

2   legitimate reason for discounting Plaintiff's credibility.  *Thomas*, 278 F.3d at 958.

3       Second, the ALJ found Plaintiff's conservative treatment inconsistent with

4   Plaintiff's allegedly debilitating condition.  Tr. 24-26, 30 (discussing the

5   conservative treatment prescribed and followed by Plaintiff, including Plaintiff's

6   mere use of muscle relaxers for her pain); *see also* 87-88, 128, 470, 542.  These

7   inconsistencies between Plaintiff's alleged limitations and her conservative

8   treatment provided a permissible and legitimate reason for discounting Plaintiff's

9   credibility.  *Thomas*, 278 F.3d at 958; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th

10  Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a

11  claimant's testimony regarding the severity of an impairment.").

12      Accordingly, because the ALJ provided specific, clear, and convincing

13  reasons based on substantial evidence for discounting Plaintiff's credibility, this

14  Court does not find error.

15  **B. Opinion Evidence**

16      There are three types of physicians: "(1) those who treat the claimant

17  (treating physicians); (2) those who examine but do not treat the claimant

18  (examining physicians); and (3) those who neither examine nor treat the claimant

19  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

20  *Holohan*, 246 F.3d at 1201-02 (citations omitted).  "Generally, a treating

physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted). A physician's opinion may be entitled to little, if any, weight when it is an opinion on a matter not related to her or his area of specialization. *Id.* at 1203 n. 2 (citation omitted).

A treating physician's opinions are generally entitled to substantial weight in social security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir.2009). If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). An ALJ may

also reject a treating physician's opinion which is "based to a large extent on a

claimant's self-reports that have been properly discounted as incredible."

*Tommasetti*, 533 F.3d at 1041 (internal quotation and citation omitted).

### 1. **Dr. Vicki Short**

Plaintiff first contends the ALJ erred by failing to give proper weight to the

opinion of her treating physician, Dr. Short.  ECF No. 11 at 18-19.  Specifically,

Plaintiff points to Dr. Short's November 2011 evaluation in which she opined

Plaintiff was unable to work.  *Id.* at 18; Tr. 637.

This Court finds the ALJ properly rejected the opinion of Dr. Short.

Because Dr. Short's opinion was contradicted, *see* Tr. 30 (noting that although Dr.

Short opined Plaintiff was unable to work, examinations by Drs. Gruber, Green,

and Farwell opined that Plaintiff was capable of light exertion work), the ALJ need

only have given specific and legitimate reasoning supported by substantial

evidence to reject it.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found inconsistencies within Dr. Short's own examination.

Although Dr. Short opined Plaintiff was unable to return to work, her treatment

notes did not suggest total disability.  Tr. 30, 608.  Because inconsistencies

between a doctor's opinion and her own reports, as well as other objective

evidence, provide specific and legitimate reasoning for rejecting even a treating

doctor's opinion, *see Bayliss*, 427 F.3d at 1216 (finding a discrepancy between a

1   doctor's opinion and his other recorded observations and opinions provided a clear

2   and convincing reason for not relying on that doctor's opinion), the ALJ properly

3   rejected Dr. Short's opinion.

4        Second, the ALJ found Dr. Short's opinion was influenced by Plaintiff's

5   subjective opinion that she was not ready to return to work.  Tr. 30, 608.  As

6   explained above, the ALJ determined Plaintiff's self-reporting was not credible.

7   Because the ALJ need not accept a medical opinion based on a claimant's non-

8   credible self-reporting, *Tomasetti,* 533 F.3d at 1041, the ALJ properly rejected this

9   diagnosis.  Accordingly, the ALJ did not err in rejecting Dr. Short's opinion.

### 2.  **Dr. Dennis Pollack**

11       Plaintiff also contends the ALJ erred by failing to give proper weight to the

12  opinion of Dr. Dennis Pollack.  ECF No. 11 at 19-20.  Specifically, Plaintiff points

13  to Dr. Pollack's October 2010 evaluation, in which he opined Plaintiff suffered

14  from marked limitations in "the ability to perform activities within a schedule,

15  maintain regular attendance, and be punctual within customary tolerances" and

16  "the ability to complete a normal workday and workweek without interruptions

17  from psychologically-based symptoms and to conform to a consistent pace without

18  an unreasonable number and length of rest periods."  *Id.*; Tr. 578.

19       This Court finds the ALJ properly rejected the opinion of Dr. Pollack.

20  Because Dr. Pollack's opinion was contradicted, *see* Tr. 30-31 (noting that Dr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

Pollack's report is inconsistent with the longitudinal record, which indicated

Plaintiff engages in a variety of activities of daily living, has normal intelligence,

and no neuropsychological impairments), the ALJ need only have given specific

and legitimate reasoning supported by substantial evidence to reject it. *Bayliss*,

427 F.3d at 1216.

First, the ALJ found inconsistencies between Dr. Pollack's narrative and

ultimate assessment.  Although Dr. Pollack opined Plaintiff would have difficultly

performing activities within a schedule, maintaining regular attendance, and being

punctual within customary tolerances; he noted in his narrative that Plaintiff woke

daily at 5:00 am, prepared breakfast for her daughter, and brought her daughter to

school.  Tr. 30-31, 574.  Further, although Dr. Pollack opined that Plaintiff's ability

to complete a work day would be seriously affected by her psychologically-based

symptoms, besides Plaintiff's anxiety attacks that Plaintiff testified occur several

times a month, the ALJ found nothing else in Dr. Pollack's narrative that supported

this opinion.  Tr. 30-31, 572-74, 577.  Because inconsistencies between a doctor's

opinion and his own reports, as well as other objective evidence, provides a

specific and legitimate reason for rejecting a doctor's opinion, *see Bayliss*, 427

F.3d at 1216 (finding a discrepancy between a doctor's opinion and his other

recorded observations and opinions provided a clear and convincing reason for not

relying on that doctor's opinion), the ALJ properly rejected Dr. Pollack's opinion.

Finally, the ALJ questioned the reliability of Dr. Pollack's report because Plaintiff's attorney requested the evaluation. Tr. 30. While this reason alone is insufficient to invalidate a report, the ALJ highlighted the doubt Dr. Pollack's often sought-after "favorable reporting" cast on his ultimate opinion. Tr. 30. As the Ninth Circuit has clarified, "*in the absence of other evidence* to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (emphasis added). Here, because the ALJ noted this reason for undermining the credibility of Dr. Pollack's report was bolstered by the reason identified above, this Court does not find error.

**C. Step Three Analysis**

At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to determine whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R § 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The claimant bears the initial burden of proving that his or her impairments meet or equal a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-33 (1990). "To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099. "To *equal* a listed impairment, a claimant must establish symptoms, signs and

laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment."  *Id.* (citing 20 C.F.R. § 404.1526).  A determination of medical equivalence "must be based on medical evidence only."  *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(d)(3)); *see also Bowser v. Comm'r of Soc. Sec.*, 121 F. App'x 231, 234 (9th Cir. 2005) ("Step three . . . directs the adjudicator to determine whether, in light of the objective medical evidence, the claimant has a severe impairment or combination of impairments that meets or equals the criteria in the Listing of Impairments . . . .").  If a claimant's impairments meet or medically equal a Listing, the claimant is "conclusively presumed to be disabled," and is entitled to an award of benefits.  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995) ("Claimants are conclusively disabled if their condition either meets or equals a listed impairment.") (emphasis omitted).

Here, Plaintiff argues that the ALJ erred in finding that her impairments did not meet or medically equal listed impairments under §1.02(B) or §1.04(A).  ECF No. 11 at 13.  Specifically, Plaintiff argues that, based on Dr. Francis' testimony, the ALJ should have found that Plaintiff's impairments either meet or equal these Listings and thus that Plaintiff is presumptively disabled.  *Id.*

The Court rejects this argument.  Dr. Francis, the medical expert, never stated that Plaintiff's limitations met these Listings; rather, Dr. Francis opined that Plaintiff's limitations should be evaluated under these listings.  Tr. 26-27, 85-86. Quite the opposite, Dr. Francis opined that Plaintiff was capable of light work, rather than presumptively disabled and incapable of work.  Tr. 26-27, 87-88. Because there was not enough evidence to find that Plaintiff's limitations met or equaled these Listings, Plaintiff did not meet her burden at step three.  *Sullivan*, 493 U.S. at 530-33.  Accordingly, the ALJ did not err.

**D. Hypothetical Question Posed to Vocational Expert**

"Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value."  *Embrey*, 849 F.2d at 423.  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984).

Plaintiff contends the ALJ's hypothetical question posed to the vocational expert did not adequately express the full extent of her physical and mental limitations.  ECF No. 11 at 13-14.  Specifically, Plaintiff contends the question posed did not adequately portray the psychological limitations as diagnosed by Dr. Pollack and Plaintiff's physical limitations regarding her inability to reach.  *Id.*

The Court disagrees.  First, regarding Plaintiff's mental limitations, this argument is derivative of Plaintiffs' arguments concerning the ALJ's rejection of Dr. Pollack's opinion.  Given that the ALJ properly rejected this evidence, no error has been shown.  *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding that it is proper for the ALJ to give little evidentiary weight to discredited evidence when determining the RFC finding).   Second, regarding her physical limitations, the ALJ *did* include Plaintiff's inability to reach, to the extent credibly supported by the record.  Specifically, the ALJ included the following physical limitations in his hypothetical:

> Let's assume I find this individual capable of performing work at the following exertional and non-exertional levels. Exertionally, this individual would be able to sit for two hours and stand for two hours, walk for two hours at a time, sit six hours stand six hours, walk six hours in an eight our day with normal breaks, lift no more than 20 pounds occasionally, up to carry 10 pounds frequently, no frequent or prolonged pushing or pulling of arm controls with the right arm – that's the dominant arm. Non-exertionally, would require a job with only occasional stooping, crouching, crawling, no frequent ramps or stairs, no ladders, ropes, or scaffolds; this individual should avoid concentrated exposure to strong, industrial type vibration, should avoid concentrated to extreme cold, and avoid concentrated exposure

to hazards, such as hazardous machinery and unprotected heights, things of that nature. And there should be no overhead reaching with the right upper extremity, and could occasionally reach all direction with the right upper extremity.

Tr. 64-65.  In response to this hypothetical, which included Plaintiff's limitations with her impaired arm, the Vocational Expert determined that Plaintiff would be able to perform the job of a flagger, in addition to a parking lot attendant and survey worker, where frequent reaching could be accomplished with the unimpaired arm.  Tr. 67-68.  Therefore, given that the hypothetical question included the extent of Plaintiff's impairments supported by the record, no error has been shown.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 12) is

    **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter **JUDGMENT** for **DEFENDANT**, provide copies to counsel, and **CLOSE** the file.

**DATED** November 12, 2014.



THOMAS O. RICE
United States District Judge